**REDACTED COPY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FRANK PLAHUTNIK, JR.,

                              Plaintiff,          **OPINION AND ORDER**

           - against -                  10-CV-1071 (CS)

DAIKIN AMERICA, INC.,

                              Defendant.
------------------------------------------------------------------x

Appearances:
Reginald H. Rutishauser
Kantrowitz, Goldhammer & Graifman, P.C.
Chestnut Ridge, New York
*Counsel for Plaintiff*

Jerome P. Coleman
Sean H. Close
Putney, Twombly, Hall & Hirson LLP
New York, New York
*Counsel for Defendant*



Seibel, J.

      Before the Court is Defendant's Motion for Summary Judgment. (Doc. 31.) For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.

I.    **BACKGROUND**

      Plaintiff was employed by Daikin America, Inc. ("DAI"), a chemical manufacturing company, from 2003 until he was terminated in 2009. (D's 56.1 ¶¶ 3-4, 15, 29.)[1] Plaintiff was initially hired as a Business Manager in DAI's Fluoroelastomers Business Unit, (*id.* ¶ 15), and in

---

[1] "D's 56.1" refers to Defendant's Rule 56.1 Statement. (Doc. 33.) "P's 56.1" will refer to Plaintiff's Response to Defendant's Rule 56.1 Statement of Allegedly Uncontested Material Facts. (Doc. 39.) I will refer only to Defendant's Rule 56.1 Statement where the material fact has been expressly admitted, or deemed admitted because of Plaintiff's failure to cite to the record in controverting the material fact. *See* Local Civ. R. 56.1(d).

2007 became the Business Manager in DAI's New Business Development ("NBD") Group, (*id.* ¶ 16).

DAI – a Delaware corporation with its headquarters in Orangeburg, New York – is a subsidiary of Daikin America Holdings, Inc., which itself is a wholly-owned subsidiary of Daikin Industries, Ltd. ("DIL"), a Japanese corporation with its headquarters in Osaka, Japan. (*Id.* ¶¶ 1-3).[2] DIL operates a rotational system whereby it sends executives to work in DIL's subsidiaries, including DAI, for a period of time apparently ranging from three to ten years. (*Id.* ¶¶ 6-8;[3] D's Dep. 50-51.) These so-called "rotational" employees are all Japanese citizens. (D's 56.1 ¶ 11.)

Due at least in part to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (*id.* ¶¶ 30-31), DAI reorganized the NBD Group and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (*id.* ¶¶ 29, 35).[4] Such reorganization included eliminating the NBD Group entirely and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* ¶¶ 41-43.) Of the three Caucasian-American employees of the NBD Group, Plaintiff and one other were laid off; the third was retained, reassigned, and made responsible for sales planning support. (*Id.* ¶¶ 18, 57.)

---

[2] Plaintiff makes much of Defendant's initial failure to disclose the intermediary holding company in connection with its disclosures pursuant to Fed. R. Civ. P. 7.1. (Docs. 5, 21.) Whether DAI is a direct or indirect subsidiary of DIL, however, has no bearing on the disposition of the instant motion.

[3] Plaintiff denies D's 56.1 ¶ 6, citing only paragraphs 10 and 11 of Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment ("P's Aff."), (Doc. 36). Plaintiff also denies D's 56.1 ¶ 7, citing paragraphs 10 and 11 of his Affidavit, as well as pages 50-51 of the Examination Before Trial of the Defendant, Daikin America, Inc., by Ritchie Straff ("D's Dep."), which is Exhibit F to the Declaration of Jerome P. Coleman ("Coleman Decl."), (Doc. 32). The cited record portions do not support Plaintiff's denial of the fact that DIL operates a rotational system whereby it sends executives to work in DIL's subsidiaries, including DAI, temporarily for a period anywhere from three to ten years.

[4] Plaintiff denies D's 56.1 ¶ 35, citing evidence that only goes toward ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiff does not appear to dispute that Defendant ▮▮▮▮▮▮▮, and that Defendant did so to ▮▮▮▮▮▮. That laying off rotationals might have ▮▮▮▮▮▮▮▮ does not mean that laying off non-rotationals would not also ▮▮▮▮▮▮▮. Further, Plaintiff admits that "[a]s a result of the reorganization, certain DIL employees were recalled to Japan the following month in March," (P's 56.1 ¶ 56), which would have also had the effect of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. D's 56.1 ¶ 35 is thus deemed admitted.

Plaintiff was terminated as part of this reorganization▮. (*Id.* ¶ 29.) DAI admits that it did not consider any rotational employee in connection with this reorganization▮, and asserts that it had no authority to terminate rotationals. (*Id.* ¶ 40).

Plaintiff commenced this action on February 11, 2010. (Doc. 1.) He claims that he was discriminated against on the basis of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as the New York Human Rights Law, § 296 *et seq.* ("NYHRL"), principally in connection with his termination, but also with respect to excessive scrutiny, transfer to the NBD Group, and failure to promote.[5] Plaintiff's position is that because the rotational employees – who are all Japanese citizens (and apparently of Japanese race and national origin)[6] – were essentially shielded from layoffs, DAI discriminated against Plaintiff on the basis of his race (Caucasian) and national origin (American). (*See, e.g.*, P's Mem. 4-5.)[7] DAI's position is that it had no authority to terminate rotational employees, who maintained their status as employees of DIL notwithstanding the fact that they were working at a subsidiary. (D's 56.1 ¶ 10; D's Mem. 14-15.)[8] DAI also proffers non-discriminatory reasons for terminating Plaintiff, including general economic decline, no optimism regarding Plaintiff's future contribution, and Plaintiff's declining performance. (D's Mem. 16-17.)

---

[5] To the extent that Plaintiff relies on other adverse employment actions in his complaint, such claims are deemed abandoned, as Plaintiff has failed to argue them in his brief opposing summary judgment. *See Marache v. Akzo Nobel Coatings, Inc.*, No. 08-CV-11049, 2010 WL 908467, at *15 (Mar. 12, 2010) (collecting cases), *adopted by* 2010 WL 3731124 (S.D.N.Y. Sept. 7, 2010); Local Civ. R. 7.1(a).

[6] The only evidence that Plaintiff has provided on this point is that the rotationals are Japanese citizens. This does not necessarily mean that they are of Japanese race or national origin. My ruling herein regarding Plaintiff's discrimination claim is conditioned on Plaintiff's supplying, within 14 days of the date of this Order, evidence regarding the race and national origin of the rotational employees.

[7] "P's Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. 38.)

[8] "D's Mem." refers to the Memorandum of Law in Support of Defendant Daikin America, Inc.'s Motion for Summary Judgment. (Doc. 34.)

3

Plaintiff also brings a hostile work environment claim under Title VII and the NYHRL, pointing in his complaint to Plaintiff's exclusion from Japanese-only meetings, that "the treatment of Japanese employees, in general, was better than Americans," and one comment from Plaintiff's boss that he "should be more Japanese." (Compl. ¶ 23.)[9]

Plaintiff also brings a Title VII retaliation claim under 42 U.S.C. § 2000e-3(a), alleging that he was subjected to adverse consequences after he complained about discrimination. (*Id.* ¶¶ 41-43.) Finally, Plaintiff brings a breach of contract claim based on an alleged employment agreement. (*Id.* ¶¶ 44-47.)

Defendant has moved for summary judgment on all claims. (Doc. 31.) For the following reasons, Defendant's Motion is granted in part and denied in part.

## II.   DISCUSSION

### A. Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every

---

[9] "Compl." refers to the Complaint. (Doc. 1.)

4

element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).[10] Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).[11] In the event that "a party fails . . . to properly address another party's assertion of

---

[10] Plaintiff's opposition brief is devoid of *any* citation to the record or to the parties' Rule 56.1 statements, and many of Plaintiff's responses to Defendant's Rule 56.1 statements contain citations only to Plaintiff's Affidavit, which itself fails to cite to the record to support many of the factual assertions therein. This alone could form the basis for summary judgment against Plaintiff, as the Court is not obligated to "perform an independent review of the record to find proof of a factual dispute," *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) (collecting cases), and the Local Civil Rules require citation to admissible evidence to support or controvert any statement of material fact, *see* Local Civ. R. 56.1(d).

[11] Plaintiff's Affidavit is almost entirely argumentative and/or about matters of which he lacks personal knowledge. *See, e.g., Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 254-55 (S.D.N.Y. 2009) ("[T]o the extent Primmer's affidavit uses conclusory or argumentative language, the Court will not make the suggested inferences simply because Plaintiff has suggested them."); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *4 (S.D.N.Y. Jan. 24, 2007) (district court is free to strike or simply decline to consider portions of affidavit not made on personal knowledge). Further, "[i]t is beyond cavil that a party may not create an issue of fact by submitting an affidavit in

fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

"Though caution must be exercised in granting summary judgment where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994) (citation omitted); *see Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

B. Title VII Discrimination Claims

1. Legal Standard

Title VII discrimination claims are analyzed pursuant to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Claims under the NYHRL are analyzed under the same rubric. *See Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010); *Williams v. City of N.Y.*, No. 11-CV-9679, 2012 WL 3245448, at *8 (S.D.N.Y. Aug. 8, 2012). Under this framework, a plaintiff bears the initial and minimal burden of establishing a *prima facie* case of discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). To make out a *prima facie* case, a plaintiff must show that, "(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under

---

opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) (alteration and internal quotation marks omitted); *see Ramos v. Baldor Specialty Foods, Inc.*, No. 10-CV-6271, 2011 WL 2565330, at *4 (S.D.N.Y. June 16, 2011) (contradictory declaration is not subject to cross-examination and runs afoul of rule that a party may not create a material issue of fact on summary judgment by submitting contradictory declarations). Thus, Plaintiff's Affidavit will be considered only to the limited extent it contains facts on personal knowledge that do not contradict Plaintiff's deposition testimony.

circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

Once a *prima facie* case is established, a "rebuttable presumption of discrimination arises" and the burden of production shifts to the defendant "to articulate a legitimate, non-discriminatory reason" for the adverse employment action. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Once the defendant proffers a legitimate, non-discriminatory reason, the presumption drops away, and the plaintiff must prove that the reason offered by the defendant was not its true reason but rather a pretext for unlawful discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001). The plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (alterations and internal quotation marks omitted). "To get to the jury, 'it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.'" *Id.* (alterations omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Id.* The ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated. *Reeves*, 530 U.S. at 143.

2. Application

Plaintiff claims adverse employment action in the form of increased or excessive scrutiny, his transfer to the NBD Group, failure to promote, and his termination. I address each in turn.

i.  Excessive Scrutiny

Increased or excessive scrutiny cannot, without more, support a Title VII discrimination claim. *See Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions.") (collecting cases); *see also Figueroa v. N.Y.C. Health & Hosps. Corp.*, No. 03-CV-9589, 2007 WL 2274253, at *6 n.6 (*Lucenti* applicable to intentional discrimination claims). Accordingly, to the extent that Plaintiff claims discrimination based on increased or excessive scrutiny, such claim must be dismissed.

ii.  Transfer to NBD Group

"A lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way." *Patrolmen's Benevolent Ass'n v. City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2003). This may include "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (alteration and internal quotation marks omitted). Plaintiff's transfer to the NBD Group was a lateral transfer unaccompanied by any reduction of job title, salary, or benefit. (D's 56.1 ¶ 86.)[12] Furthermore, Plaintiff has failed to identify any materially adverse change in working conditions associated with this transfer. He argues in his brief that "harassment increased after" the transfer, but does not cite to the record in support of this entirely unspecific and conclusory assertion, (P's Mem.

---

[12] In support of D's 56.1 ¶ 86, Defendant cites Plaintiff's deposition testimony, in which Plaintiff admits that there was no reduction in salary, benefits, or title associated with the transfer to the NBD Group, admits that he was given the title of "business manager," and states that the transfer "was a lateral." (Deposition of Frant Plahutnik, Jr. ("P's Dep."), Coleman Decl. Ex. C, 120-21.) In denying D's 56.1 ¶ 86, Plaintiff cites to his own testimony that he was transferred after making a complaint. (*Id.* at 96-98). The Court cannot understand the basis for Plaintiff's denial, and in the face of his admission, deems D's 56.1 ¶ 86 admitted for purposes of this Motion.

8

10), and in any event, that a new supervisor may be more difficult does not render the transfer adverse. In short, Plaintiff cites no negative employment consequences associated with the transfer.[13] Thus, to the extent that Plaintiff claims discrimination based on his transfer to the NBD Group, such claim must also be dismissed.

### iii. Failure to Promote

Plaintiff's failure-to-promote claims fail for several reasons. First, Plaintiff failed to raise a failure-to-promote claim in his EEOC Charge. "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action [only] if they are 'reasonably related' to those that were filed with the agency." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)). A claim is "reasonably related" to an EEOC Charge if it "provided the EEOC with sufficient notice to investigate the allegation." *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) (summary order) (citing *Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (*per curiam*)). Plaintiff's only EEOC allegation that could even remotely be reasonably related to his failure-to-promote discrimination claim is the statement that "the treatment of Japanese employees, in general, is better than the Americans." (Coleman Decl. Ex. J.) This is plainly insufficient to put the EEOC on notice to investigate patterns of promotion, let alone any other allegedly discriminatory treatment.

---

[13] Plaintiff asserts in his Affidavit that he "believe[s] that [his] transfer to [the] NBD [Group] was in retaliation for the position that [he] took in standing up to abusive Japanese conduct toward [C]aucasian-American employees," (P's Aff. ¶ 55), but it is hard to see how giving an unhappy employee a fresh start in a lateral position could be retaliatory. In any event, regardless of the motive for the transfer, it did not affect the terms and conditions of Plaintiff's employment.

Furthermore, Plaintiff has not argued his failure-to-promote claim in his brief,[14] and arguments not made in opposition to a motion for summary judgment are deemed abandoned. *See Marache*, 2010 WL 908467, at *15 (collecting cases); Local Civ. R. 7.1(a). Finally, to the extent that Plaintiff "seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, . . . . the plaintiff's credentials . . . have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted). Here, Plaintiff has provided no evidence – other than his own unsupported opinion, (*see, e.g.*, P's Aff. ¶¶ 66-70), which is not an adequate basis for a Title VII discrimination claim, *see Parikh v. N.Y.C. Transit Auth.*, 681 F. Supp. 2d 371, 380 (E.D.N.Y. 2010); *accord Lomotey v. Conn., Dep't of Transp.*, No. 09-CV-2143, 2012 WL 642763, at *18 (D. Conn. Feb. 28, 2012) – that his credentials were even comparable, let alone clearly superior, to anyone else's.

Accordingly, Plaintiff's discrimination claim based on failure to promote must also be dismissed.

    iv.    <u>Wrongful Termination</u>

There is no dispute that Plaintiff suffered an adverse employment action when he was terminated, and that he is a member of a protected class based on his race and national origin. Defendant admits that it did not include the rotationals in considering whom to lay off, (D's 56.1 ¶ 40), but argues that rotationals are not similarly situated to Plaintiff – and therefore cannot be the basis for a discrimination claim – because DAI has no authority to terminate them, (*see* D's

---

[14] The only statement in his brief regarding failure to promote is in the context of hostile work environment. (*See* P's Mem. 6 ("Plaintiff also presented other evidence of hostile work environment. 'Rotationals' were given numerous positions and promotions that were not offered to non-Japanese employees.").)

Mem. 14-15). Plaintiff argues that there is a genuine dispute as to whether Defendant has authority to terminate these rotational employees, citing the absence of documentation regarding the lack of termination authority, the fact that the CEO of DAI reviews the rotational employees, and the fact that the rotationals are on DAI's payroll and have United States taxes withheld. (P's Mem. 4-5; P's 56.1 ¶ 40; P's Aff. ¶¶ 15, 18, 23-25.)

The only evidence that Defendant has proffered to support its contention that DAI had no authority to terminate rotational employees is the testimony and affidavits of Ritchie Straff (a Vice President of DAI) and Kazuhito Kitsuki (CEO of DAI) – that is, interested officers of DAI. But a district court "must disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves*, 530 U.S. at 151, such as testimony and affidavits of interested witnesses, *see id.*; *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009); *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 377-78 (S.D.N.Y. 2010). Plaintiff, for his part, proffers W-2 forms of at least some rotational employees indicating that they were on DAI's payroll and had U.S. taxes withheld, (*e.g.*, Rutishauser Decl. Ex. 10, at DAI00592, DAI00596),[15] testimony of Straff and Kitsuki indicating the absence of documentation regarding DAI's lack of authority to terminate the rotationals, (*see* D's Dep. 19-21; Kitsuki Dep. 37-39),[16] and testimony from Kitsuki that he reviews the rotationals' work, (*see* Kitsuki Dep. 40-41). This is sufficient to raise a genuine dispute as to a material fact – namely, whether DAI had authority to terminate the rotationals,[17] and thus whether DAI discriminated against non-rotational (presumably non-Japanese) employees in terminating Plaintiff. In other words, that Japanese rotational employees

---

[15] "Rutishauser Decl." refers to the Declaration of Reginald H. Rutishauser. (Doc. 37.)

[16] "Kitsuki Dep." refers to the Examination Before Trial of Kazuhito Kitsuki. (Rutishauser Decl. Ex. 11.)

[17] That a fact issue exists as to DAI's authority to dismiss rotational employees distinguishes this case from *Brown v. Daikin America, Inc.*, No. 10-CV-4688, in which I dismissed a similar lawsuit against both DAI and DIL. In *Brown*, the Plaintiff had conceded in his complaint that DAI had no power to discharge rotational employees. *See Brown v. Daikin America, Inc.*, No. 10-CV-4688, ECF No. 22, at 17-18 (S.D.N.Y. Aug. 19, 2011).

11

were not considered for downsizing is enough to meet Plaintiff's *de minimis* burden, as part of his *prima facie* case, of raising an inference of discrimination, and the factual dispute regarding Defendant's authority to dismiss such employees raises a question of fact as to pretext. Likewise, there are disputed facts regarding Plaintiff's performance that require jury evaluation as to whether they are pretextual. Accordingly, summary judgment for Defendant is inappropriate on the wrongful termination claim.

C. Title VII Hostile Work Environment

1. Legal Standard

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of . . . employment . . . ." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks omitted). A plaintiff must show both that he "subjectively perceived [the] work environment as hostile or abusive," and that "a reasonable person would find the work environment objectively hostile or abusive." *Andersen v. Rochester City Sch. Dist.*, No. 11-CV-1955, 2012 WL 1632581, at *1 (2d Cir. May 10, 2012) (summary order) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)); *see Gorzynski*, 596 F.3d at 102. Courts analyze hostile work environment claims by looking at "the totality of the circumstances, considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (quoting *Harris*, 510 U.S. at 23).

2. Application

Plaintiff has failed to provide any evidence of discrimination that was "sufficiently severe or pervasive to alter the conditions of . . . employment." *Gorzynski*, 569 F.3d at 102. Plaintiff states the following in his brief, completely unsupported by citation to the record:

> Plaintiff presented abundant evidence of a hostile work environment. Non-Japanese employees were told that Americans were lazy and inferior. Mr. Straff told plaintiff, "You should be more Japanese." Plaintiff complained to Mr. Straff about his supervisor in the fluoroelastomers group and, shortly after, he was transferred to the NBDG. Plaintiff's new supervisor, Mr. Tachihara, made plaintiff's work even more difficult by constant belittling, berating, criticism, and bothering plaintiff. . . .
>
> Plaintiff also presented other evidence of [a] hostile work environment. "Rotationals" were given numerous positions and promotions that were not offered to non-Japanese employees. "Rotationals" were present in Japanese[-]only meetings where non-Japanese employees such as plaintiff were excluded from important information and decisions that affected the business.

(P's Mem. 5-6.)[18] Again, the Court is not obligated to "perform an independent review of the record to find proof of a factual dispute," *Amnesty Am.*, 288 F.3d at 470-71 (collecting cases). Even giving Plaintiff the benefit of the doubt, however, the evidence cannot support a hostile work environment claim. The "Americans are lazy" presentation supposedly given by DIL's president, and the "you should be more Japanese" comment, even if discriminatory,[19] were isolated and sporadic incidents, generally insufficient to establish a hostile work environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 & n.126 (S.D.N.Y. 2008). As discussed above, there is no evidence that the transfer to the NBD Group was adverse in any way. Further, Plaintiff has

---

[18] This excerpt is from Plaintiff's "Statement of Facts." Plaintiff's three-paragraph hostile work environment "Argument" section is even less helpful, discussing three cases but completely failing to apply them to the instant case. (*See* P's Mem. 12-13.)

[19] Plaintiff admits that he understood his boss's comment – that he "should be more Japanese" – to mean that he should be more detail-oriented. (P's Dep. 70.) That interpretation could itself smack of stereotyping.

provided no evidence, other than his unsupported opinion, that the "belittling, berating, criticism, and bothering" by Tachichara had anything whatsoever to do with Plaintiff's race or national origin, as opposed to dissatisfaction with his performance. (*See* P's Aff. ¶¶ 56-58.) Even if it did, excessive criticism is generally insufficient to support a claim of a pervasive or severe hostile work environment. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order). Regarding the exclusion from "Japanese only meetings," (P's Aff. ¶¶ 44-50), Plaintiff has provided no evidence that these were anything but meetings of rotational employees,[20] and in any event, occasional exclusion from meetings is not enough to support a hostile work environment claim. *See Fleming*, 371 F. App'x at 119. And the Court fails to see, and Plaintiff has not adequately explained, how the placement of rotationals within DAI supports a claim of "sufficiently severe or pervasive" discrimination.

In sum, considering the totality of the circumstances, there is insufficient evidence to support a hostile work environment claim because the conduct complained of is sporadic and not severe, and there is no indication that it interfered in any way with Plaintiff's work performance. Plaintiff's hostile work environment claim is dismissed.

D. Title VII Retaliation Claim

1. Legal Standard

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) that [he] was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that [he] suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

---

[20] Plaintiff states in his Affidavit that he complained about his exclusion from these meetings to his supervisor, whose response according to Plaintiff was, "it was better that [Plaintiff] didn't know about the meetings." (P's Aff. ¶ 47.) Even accepting this as true, it does not support Plaintiff's claim of discrimination.

14

With respect to the first and second elements, "the plaintiff need not establish that the conduct [he] opposed was actually a violation of Title VII, but only that [he] possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute" and that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Id.* (internal quotation marks omitted); *see Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448-49 (S.D.N.Y. 2011) (collecting cases); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (no protected activity because the "competent evidence in the record showed that any complaints [plaintiff] made were generalized and therefore [defendant] could not reasonably have understood that [plaintiff] was complaining of [discrimination]").

2. Application

In the first instance, Plaintiff failed to set forth any facts in his EEOC Charge to place the EEOC on notice of a claim of retaliation. *See Hoffman*, 443 F. App'x at 649. The EEOC Charge mentions no participation in protected activity, such as lodging a complaint of discrimination, and no adverse action that is causally connected to any protected activity. And Plaintiff admits that he did not allege retaliation in his EEOC Charge. (P's 56.1 ¶ 95.) Plaintiff's retaliation claim can be dismissed on that basis alone. *See, e.g., Shah*, 168 F.3d at 613 ("The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge.").

Furthermore, Plaintiff has not offered evidence from which a rational jury could conclude that he engaged in a protected activity, such as lodging a complaint of discrimination. Plaintiff, without citation to the record, refers in his brief *only* to Mr. Tachihara's testimony that he was aware of Plaintiff's complaints to Straff. (P's Mem. 16.) It appears, however, that this is a mischaracterization of the testimony; when asked if Straff spoke to him about Plaintiff's "complaints to [Straff] about how [Tachihara was] dealing with [him]," Tachihara stated "I don't

remember any complaint." (Tachihara Dep. 46).[21] Furthermore, it appears based on Plaintiff's own testimony that the complaint to Straff related not to discrimination, but simply to the level of detail that Tachihara required in Plaintiff's sales reports. (*See* P's Dep. 69-70.)

Plaintiff's Affidavit, which is not cited in his brief, refers to other complaints, (*see, e.g.*, P's Aff. ¶¶ 47, 55, 58, 60), but Plaintiff does not assert that the complaints were specifically of discrimination – as opposed to "general allegations of mistreatment," which are not "protected" under Title VII, *Drumm v. SUNY Geneseo Coll.*, No. 11-CV-2463, 2012 WL 2477015, at *1 (2d Cir. June 29, 2012) (summary order); *see Benn v. City of N.Y.*, No. 11-CV-1290, 2012 WL 1863977, at *1 (2d Cir. May 23, 2012) (summary order) – let alone that his complaints were specific enough such that his employer "understood, or could reasonably have understood" that they were directed at discrimination on the basis of race or national origin, *see Galdieri-Ambrosini*, 136 F.3d at 292. And, even assuming that Plaintiff's complaints were "protected activity," Plaintiff has provided no evidence that his termination occurred near enough in time to the complaints to support an inference that they are causally related. *See, e.g., Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) ("Most of the decisions in this Circuit that have addressed this issue have held that lapses of time shorter than even three months are insufficient to support an inference of causation.") (collecting cases).

For the foregoing reasons, Plaintiff's retaliation claim must be dismissed.

E. <u>Breach of Employment Contract</u>

1. <u>Legal Standard</u>

"New York law is clear that absent 'a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's

---

[21] "Tachihara Dep." refers to the Examination Before Trial of Kiyomi Tachihara. (Rutishauser Decl. Ex. 12.)

16

right at any time to terminate an employment at will remains unimpaired.'" *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008) (quoting *Murphy v Am. Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983)). If an employment agreement has a fixed and definite duration, the "at-will doctrine is inapplicable." *Rooney v. Tyson*, 91 N.Y.2d 685, 689 (1998); *accord Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 137 (2d Cir. 2007).

2. Application

The purported employment agreement is styled "Internal Memorandum" and its stated purposes are to "move ahead rapidly with a comprehensive collaboration with [DAI's joint venture partner]" and "to effect changes to project group content, priorities, staffing, structure, etc." (Coleman Decl. Ex. I; Rutishauser Decl. Ex. 17.)[22] The document lists numerous staff under various headings; Plaintiff is listed under the heading "Overall Responsibility for America." (*Id.*) The document also states a "period" of "September 1, 2007-August 31, 2009." (*Id.*) According to Plaintiff, the document bears the personal seals (apparently the equivalent of a signature) of Ushijima (a vice president of DAI) and Nagai (a manager of DIL). (P's Aff. ¶ 71.)

No reasonable jury could conclude that this document embodies an employment agreement between DAI and Plaintiff for a fixed duration. On its face, it is an internal memorandum regarding staffing for a project of fixed term. It could not reasonably be read to bind Defendant to employ Plaintiff, or any of the other staff mentioned, for a term coextensive with the length of the project. Furthermore, Plaintiff has presented no evidence that this internal memorandum embodies any sort of agreement between him and Defendant. And the lone case

---

[22] Exhibit I to the Coleman Declaration is a translation – apparently prepared at Plaintiff's behest – of the original Japanese document, (Coleman Decl. Ex. H; Rutishauser Decl. Ex. 16). (D's Mem. 22.) Although Defendant asserts that the translation contains factual errors, it accepts the Plaintiff's translation for purposes of this Motion, (*id.*), as do I.

17

Plaintiff cites in support, *Caeners v. Huntington Crescent Club, Inc.*, 636 N.Y.S.2d 816 (2d Dep't 1996), is inapposite, as in that case there was documentation evidencing an agreement between the plaintiff and his employer "to continue his employment for an additional year." *Id.* at 817. The memorandum here evidences no agreement whatsoever between Plaintiff and Defendant. Indeed, the suggestion that an internal staffing memo, which Plaintiff apparently never even read until this litigation, (*see* P's Aff. ¶ 71), could have been an employment contract is, if not frivolous, perilously close to frivolous.

Accordingly, Plaintiff's claim for breach of employment contract must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII and NYHRL discrimination claims arising out of anything but Plaintiff's termination, DENIED as to Plaintiff's Title VII and NYHRL discrimination claims arising out of Plaintiff's termination, and GRANTED as to Plaintiff's Title VII retaliation and breach of contract claims.[23] As mentioned above, the ruling regarding Plaintiff's discrimination claims arising out of Plaintiff's termination is conditioned on Plaintiff's supplying, within 14 days of the date of this Order, evidence regarding the race and national origin of the rotational employees.

---

[23] Whether the evidence underlying the hostile work environment claim or the dismissed discrimination claims will be admissible in connection with the discriminatory discharge claim will be determined via motions *in limine* before trial.

The Clerk of the Court is respectfully directed to terminate the pending Motion. (Doc. 31.) The parties are directed to appear for a conference on **December 3, 2012** at **4:30 p.m.**

**SO ORDERED.**

Dated: November __, 2012
      White Plains, New York

                                                _____
                                                  CATHY SEIBEL, U.S.D.J.